

FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

MAR 1 8 2011

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

JAMES MIKELL,

    Petitioner,

vs.

E. K. MCDANIEL, et al.,

    Respondents.

Case No. 3:07-CV-00577-RCJ-(RAM)

**ORDER**

    Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#6), respondents' answer (#41), and petitioner's reply (#44). The court finds that petitioner is not entitled to relief, and the court denies the petition.

    On November 11, 1999, Richard Bernard was a security guard for a slot route company, which serviced gaming machines placed in bars. He arrived in a van at a bar named Mugshots, to pick up a technician who was servicing machines there. A maroon Cadillac with a light-colored top pulled into the parking lot; three people were in the car. Two men got out of the car, held guns at Bernard, and demanded that he give them money. They also took his wallet, pistol, and radio. After proving to the men that he had no money, one man, whom Bernard identified as petitioner's co-defendant Brown, returned to the Cadillac. The other man, whom Bernard identified as petitioner, stayed in the van. All of them proceeded to another location, and Bernard noticed the license plate number of the Cadillac before being told to cover his eyes. They demanded that Bernard call for a technician to proceed with money to another establishment, which Bernard's company did not service, to pay a jackpot. After a while, not having met any success, the men drove

away in the Cadillac. Bernard fled from his van, called the police with a cell phone that the robbers did not notice, and described to the police the Cadillac and the men.

Officer James Hayes of the Las Vegas Metropolitan Police Department had just taken off in a helicopter from the airport when he received the call to look for the Cadillac. He and his partner quickly spotted a car matching that description driving at high speed on a freeway. They illuminated the car with a floodlight, saw that three people were inside, and directed ground officers to the Cadillac. The Cadillac exited the freeway, drove to an apartment complex, and three men fled from the car. Along the way, somebody threw an item out of the car.

Officer Hayes watched one man flee from the Cadillac and be arrested by a police officer. Matthew Cisneros, that officer, identified the person he arrested as petitioner.

Officer Hayes watched another man return to the Cadillac and start to drive away. Police cars quickly blocked the Cadillac. Eric Collins of the gang unit arrested petitioner's co-defendant Brown. Collins found a wallet on the driver's seat of the Cadillac. The wallet was Bernard's.

Officer Rafael Ramos looked for the object thrown out of the Cadillac. He found Bernard's radio.

Bernard identified petitioner and Brown as the robbers in a show-up at the scene of the arrest. He identified the third man, petitioner's co-defendant Adamson, in a photographic line-up.

The trial started with all three co-defendants. After the second day, Adamson agreed to plead guilty to conspiracy to commit robbery, and Brown agreed to plead guilty to robbery. Craig Mueller, whose law office was appointed to represent petitioner, testified at the post-conviction evidentiary hearing that the prosecution offered petitioner a plea bargain, but that petitioner declined. Ex. 66, p. 31 (#43). The jury found petitioner guilty.

Petitioner was convicted of kidnaping with the use of a deadly weapon and robbery with the use of a deadly weapon. Ex. 5 (#15).[1] Petitioner appealed, and the Nevada Supreme Court

---

[1] The judgment of conviction states erroneously that it was pursuant to a plea.

1  affirmed. Ex. 10 (#15). Petitioner then filed a post-conviction habeas corpus petition in state court.
2  Ex. 11, 12 (#15). The state court appointed counsel to represent petitioner, and counsel filed a
3  supplement. Ex. 14 (#15). The state court conducted an evidentiary hearing. Ex. 66 (#43).
4  Apparently there was an attempt to negotiate a plea agreement after the evidentiary hearing, but it
5  was unsuccessful and the state court denied the habeas corpus petition. Ex. 71 (#43). Petitioner
6  appealed, and the Nevada Supreme Court affirmed. Ex. 21 (#15).

7  Petitioner then commenced this action. Before serving the petition (#6) upon
8  respondents, the court dismissed (#5) grounds 1 and 2 because they were without merit.
9  Respondents filed a motion to dismiss (#14), arguing that petitioner had not exhausted his available
10 state court remedies. The court granted (#24) the motion. Petitioner dismissed (#28) grounds 3, 4,
11 and 5. Grounds 6, 7, and 8 remain for a decision on their merits.

12 Petitioner claimed in ground 1 that, after his co-defendants pleaded guilty, the trial
13 court should have given the jury a cautionary instruction. This court determined that the simple
14 statement that the judge gave sufficed. Order (#5) (citing United States v. Washabaugh, 442 F.2d
15 1127, 1129 (9th Cir. 1971). Reasonable jurists would not find this conclusion to be debatable or
16 wrong, and the court will not issue a certificate of appealability on this issue.

17 Ground 2 was a claim that the trial court erred because it canvassed petitioner about
18 his rights to testify or to remain silent after the defense had rested. The court dismissed this ground
19 because the Supreme Court of the United States has never held that a trial court must advise a
20 defendant about those rights. Order (#5). Reasonable jurists would not find this conclusion to be
21 debatable or wrong, and the court will not issue a certificate of appealability on this issue.

22 The parties agreed, and the court determined, that grounds 3, 4, and 5 were not
23 exhausted because, although petitioner raised the issues in those grounds in the memorandum
24 supporting his proper-person state habeas corpus petition, his later-appointed post-conviction
25 counsel did not present the issues to the Nevada Supreme Court on appeal from the denial of the
26 petition. Order, pp. 2-3 (#24). Reasonable jurists would not find this conclusion to be debatable or
27 wrong, and the court will not issue a certificate of appealability on this issue.

28

1  "A federal court may grant a state habeas petitioner relief for a claim that was
2  adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was
3  contrary to, or involved an unreasonable application of, clearly established Federal law, as
4  determined by the Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15
5  (2003) (quoting 28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision
6  that was based on an unreasonable determination of the facts in light of the evidence presented in
7  the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions. We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

13  Id. at 15-16. "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court
14  may not issue the writ simply because that court concludes in its independent judgment that the
15  relevant state-court decision applied clearly established federal law erroneously or incorrectly.
16  Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76
17  (2003) (internal quotations omitted).
18  The petitioner bears the burden of proving by a preponderance of the evidence that he
19  is entitled to habeas relief. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).
20  The remaining grounds, 6, 7, and 8, are claims of ineffective assistance of counsel.
21  "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson,
22  397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must
23  demonstrate (1) that the defense attorney's representation "fell below an objective standard of
24  reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's
25  deficient performance prejudiced the defendant such that "there is a reasonable probability that, but
26  for counsel's unprofessional errors, the result of the proceeding would have been different," id. at
27  694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the
28

1  inquiry in the same order or even to address both components of the inquiry if the defendant makes
2  an insufficient showing on one." Id. at 697.
3       Strickland expressly declines to articulate specific guidelines for attorney
4  performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of
5  interest, the duty to advocate the defendant's cause, and the duty to communicate with the client
6  over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's
7  duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney
8  performance.... Any such set of rules would interfere with the constitutionally protected
9  independence of counsel and restrict the wide latitude counsel must have in making tactical
10 decisions." Id. at 688-89.
11      Review of an attorney's performance must be "highly deferential," and must adopt
12 counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of
13 hindsight." Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that
14 counsel's conduct falls within the wide range of reasonable professional assistance; that is, the
15 defendant must overcome the presumption that, under the circumstances, the challenged action
16 'might be considered sound trial strategy.'" Id. (citation omitted).
17      The Sixth Amendment does not guarantee effective counsel per se, but rather a fair
18 proceeding with a reliable outcome. See Strickland, 466 U.S. at 691-92. See also Jennings v.
19 Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell
20 below an objective standard of reasonableness alone is insufficient to warrant a finding of
21 ineffective assistance. The petitioner must also show that the attorney's sub-par performance
22 prejudiced the defense. Strickland, 466 U.S. at 691-92. There must be a reasonable probability that,
23 but for the attorney's challenged conduct, the result of the proceeding in question would have been
24 different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence
25 in the outcome." Id.
26      In ground 6, petitioner claims that he received ineffective assistance of appellate
27 counsel because appellate counsel did not raise on direct appeal the issue of whether petitioner's
28

1 trial should have been severed from the trial of his co-defendants. On this issue, the Nevada
2 Supreme Court held:

> Finally, Mikkel contends that appellate counsel should have asserted on appeal that he was entitled to a separate trial. Specifically, Mikkel argues that significant spillover evidence from a co-defendant prejudiced him, but he neglects to identify the problematic evidence. Mikkel also asserts that a joint trial prejudiced him because his two co-defendants entered guilty pleas during the trial, leaving him as the sole defendant. The district court found that appellate counsel was not ineffective for raising this "futile" matter on appeal. Mikkel has not shown that the district court's findings of fact in this regard are erroneous. Thus, the district court did not err in denying this claim.

Ex. 21, p. 3 (#15).[2] Petitioner raised this in his supplemental state habeas corpus memorandum, represented by counsel. Petitioner argued that there was significant spillover evidence against him, but he did not allege what that evidence was. See Ex. 14, pp. 5-7 (#15). At the evidentiary hearing, petitioner did not allege what the spillover evidence was. See Ex. 66 (#43). On appeal from the denial of the petition, he presented no evidence to the Nevada Supreme Court that could indicate that appellate counsel performed deficiently and caused petitioner prejudice. See Ex. 18, pp. 14-16 (#15). Without that evidence, petitioner did not meet his burden of demonstrating deficient performance of counsel and prejudice. Consequently, the Nevada Supreme Court reasonably applied Strickland. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not grant a certificate of appealability on the issue.

In ground 7, petitioner claims that he received ineffective assistance of trial counsel because trial counsel did not object to the introduction of prior-bad-act evidence. He further claims that appellate counsel provided ineffective assistance because appellate counsel did not raise the issue on direct appeal. On this issue, the Nevada Supreme Court held:

> Mikkel next argues that counsel was ineffective for not objecting to the admission of prior bad act evidence. Specifically, he contends that counsel should have objected to a police officer's reference at trial to other similar robberies in the area and to another police officer's testimony concerning a co-defendant's possible gang affiliation. The district court specifically found that no prior bad acts were improperly admitted at trial and that counsel properly refrained from making frivolous objections. Mikkel has not shown that the district court's findings of fact are unsupported by substantial evidence or clearly wrong. Therefore, the district court did not err in denying this claim.

---

[2] Petitioner's name is spelled "Mikkel" in some state-court documents.

Ex. 21, p. 2 (#15) (footnotes omitted). On the question of testimony about similar robberies, James Hayes was an air unit officer of the Las Vegas Metropolitan Police Department. He testified about how he became involved in this case:

> A   We just came clear from North Las Vegas, and we were by the Spaghetti Bowl when the call came out that a robbery had occurred at DI and Sandhill at the—I believe it was Mugshots to a coin truck driver. And then we started proceeding in that direction to the call as the information—as we received information on the suspects, the description of the vehicle, and things like that.
>
> Q   Do you recall offhand what the description of the vehicle was?
>
> A   Yes. It was a maroon-type of Cadillac, light top, about '87. And they had the license plate.
>
> Q   Did they describe who might be traveling in that subject vehicle?
>
> A   Yes. The information came out from dispatch that the subjects were three black males, and they had left in that vehicle. Due to the fact that we've had several coin truck robberies in previous weeks—
>
> MS. JACKSON:   Your Honor, I'm going to object to any reference to other coin truck robberies on the basis of relevance. And certainly, if they're attributed to these individuals, then we would have had a different type of hearing before this jury trial.
>
> THE COURT:   Relevance, counsel?
>
> MS. CAMPBELL:   Your Honor, I would just—I'll ask another question.

Ex. 38, p. 79 (#42). Petitioner's claim that his counsel did not object to Hayes' testimony about other coin-truck robberies is both true and irrelevant. His co-defendant's counsel did object successfully to that testimony. An objection by petitioner's trial counsel would have been redundant. Having succeeded at trial, there was nothing for petitioner's counsel to appeal.

On the question of gang-affiliation testimony, Detective Collins of the gang unit arrested Brown and noticed Adamson at the scene. However, on cross-examination by Adamson's counsel, his testimony regarding his unit and his presence at the scene was the opposite of what petitioner alleges:

> Q   Officer Collins, your involvement in this incident—
>
> A   Yes, ma'am.
>
> Q   —was not gang-related. You happened to be un the unit, that any unit in that area was dispatched to this area to help out?

-7-

> A    I don't know about any unit, but yeah. As far as I know, it wasn't gang related, no.

Ex. 38, p. 135 (#42). Later in the same cross-examination, Collins testified:

> Q    Now you're able to say under oath that you could see a man a football field length away from you, and you're sure that this is the person [Adamson] you're looking at now?
>
> A    Yes. I've dealt with him before. I've seen him at 901 McWilliams before. I saw what he was wearing and I would say, yeah, it was the same guy.
>
> Q    You don't mean to suggest that my client is part of any gang do you?
>
> A    Okay, again, I said this wasn't gang-related as far as I knew.
>
> Q    Okay. So that answer—that's a no?
>
> A    No. He did not, as far as I know, commit a gang-related crime that night. I don't know if your—
>
> Q    So, —
>
> A    —client is a gang member or not, ma'am.

Ex. 38, pp. 137-38 (#42). What petitioner argues is a evidence or prior bad acts was actually an anti-gang officer going out of his way to explain that his presence at the arrests did not mean that petitioner and his accomplices were suspected of gang activity. There was nothing for trial counsel to object, and there was nothing for appellate counsel to raise on appeal. Under these circumstances, the Nevada Supreme Court reasonably applied <u>Strickland</u>. Reasonable jurists would not find these conclusions to be debatable or wrong, and the court will not grant a certificate of appealability on the issue.

Ground 8 is a claim that the attorney who represented petitioner at trial, Ernest Figueroa, did not properly prepare and defend petitioner. On this issue, the Nevada Supreme Court held:

> Mikkel contends that the district court erroneously denied his claims of ineffective assistance of trial and appellate counsel. He first claims that trial counsel was not adequately prepared for trial as evidenced by: failing to present an opening statement; presenting a short closing argument; cross-examining the victim too briefly; and failing to call witnesses for the defense. The district court determined that Mikkel's assertions were bare allegations, and we conclude that he has not demonstrated that the district court erred in so finding. Therefore, the district court did not err in denying this claim.

Ex. 21, p. 2 (#15) (footnotes omitted).

-8-

Petitioner complains first that Figueroa did not meet petitioner until the first day of the trial. Petitioner's complaint does not take into account what happened behind the scenes. The trial court appointed the law offices of Craig Mueller to represent petitioner. Mueller and his two associates, Figueroa and Kalani Hoo, worked on petitioner's case before trial, trying to find any weaknesses in the prosecution's case and ensuring that they were doing everything that they could do for petitioner. Ex. 66, p. 28 (#43). The problem was that two of his cases were going to trial on the same day, with neither judge willing to accommodate. Id., p. 32 (#43). Mueller learned about this conflict a week before the start of trial, and once Figueroa realized that he would need to represent petitioner at trial, he prepared non-stop. Id., p. 12 (#43). Even though Figueroa did not meet petitioner until the day of trial, it did not mean that Figueroa was unprepared.

Next, petitioner complains that Figueroa cross-examined Bernard only for a short time, did not give an opening statement, and gave only a short closing argument. Figueroa explained that he always went third in cross-examination of the prosecution's witnesses. Ex. 66, p. 14 (#43). If his cross-examination of Bernard seemed short, it was because the other two defense attorneys had already asked the obvious questions.

Regarding the opening statement, Figueroa reserved that until his case. Mueller, his employer, testified that in other cases that were hopeless,[3] he had passed on an opening statement, hoping that the prosecution would make some mistake that he could exploit in his argument. Ex. 66, p. 30 (#43). Figueroa decided that because he had no evidence to present, he would not make an opening statement and instead save his points for the argument. Id., p. 6 (#43). Because Figueroa reserved his opening statement until his case, his tactic made sense. Without any evidence of his own to present, his opening statement would have consisted of emphasizing the burden of proof and pointing out weaknesses in the prosecution's case. This was also his closing argument. See Ex. 39, pp. 38-41 (#42). If Figueroa gave an opening statement, he would have repeated himself to the jury within the span of an hour.

---

[3]The court will discuss Mueller's assessment of the case below.

-9-

Regarding the closing argument, while it was short, Figueroa pointed out what he thought were the weakest parts of the prosecution's case: Bernard's short opportunity to see the robbers, the lack of a gun, and the lack of any other physical evidence that tied petitioner to the crime. Given the nature of the case against petitioner, there was little else that Figueroa could do.

Regarding the lack of investigation, petitioner did not give his attorneys anything to investigate. Mueller testified that the information petitioner gave him about an alibi witness was a first name of Mike and a phone number that had been disconnected. Ex. 66, p. 27 (#43). No investigator could have found such a person.

Turning to prejudice, the evidence in the case shows that even if Figueroa had prepared and investigated the case in the manner that petitioner argues, it would not have made a difference. Regardless of Bernard's identification of petitioner, he did see the license plate number of the Cadillac that was used in the robbery. He gave the police that information shortly after the robbers left. The helicopter officer noticed that same Cadillac being driven a short distance away from Bernard's location. The officer kept visual contact on the Cadillac as it tried to evade police, and then the officer kept visual contact on one person, petitioner, as he fled the Cadillac and was arrested by officers on the ground. Police then recovered Bernard's wallet from the Cadillac and Bernard's radio from where a person threw it out of the Cadillac. With evidence like that against petitioner, nothing counsel could have done would have affected the jury's verdict. Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not grant a certificate of appealability on the issue.

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus (#6) is **DENIED**. The clerk of the court shall enter judgment accordingly.

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

Dated: March 18, 2011

ROBERT C. JONES
United States District Judge